UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARA OTRUSINA,

       Plaintiff,

                                  CASE NO. 2:09-CV-12828

v.                            JUDGE AVERN COHN

                                    MAGISTRATE JUDGE PAUL KOMIVES

CHRIS CRYSLER, et al.,

       Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT (docket #37 and #46)**

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     C.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.     *Personal Involvement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                a. Defendants Caruso, Washington, Sanders, and Goodwin . . . . . . . . . . . . . . . . . . . 11
                b. Defendant Crysler . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          2.     *Exhaustion with Respect to Defendant McDaniel* . . . . . . . . . . . . . . . . . . . . . . . . . 14
          3.     *Deprivation of Property* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          4.     *Emotional Distress Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
          5.     *Official Capacity Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
     D.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

\*      \*      \*      \*      \*

I.     <u>RECOMMENDATION</u>: The Court should grant in part and deny in part defendants' motions

for summary judgment. Specifically, the Court should grant summary judgment to defendants with

respect to plaintiff's: (1) claims against defendants Caruso, Washington, Sanders, and Goodwin

based on plaintiff's failure to allege their personal involvement; (2) due process claims relating to

the confiscation or destruction of her property; (3) request for emotional distress damages; and (4)

claims against defendants in their official capacities. If the Court accepts this recommendation,

plaintiff's deliberate indifference claims against the remaining defendants (Crysler, McDaniel,

Chapman, Mamidipaka, and Vallie) in their individual capacities relating to their alleged interference with or confiscation of property required by her medical needs and allegedly improper amendment of her medical details will remain pending before the Court.

II.    REPORT:

A.    *Procedural Background*

Plaintiff Sara Otrusina is a state prisoner, currently incarcerated at the Huron Valley Complex–Women's in Ypsilanti, Michigan.  At the times relevant to this action, plaintiff was also incarcerated in the now-closed Robert Scott Correctional Facility in Plymouth, Michigan.  Plaintiff commenced this action on July 17, 2009, by filing a *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  Defendants are: Michigan Department of Corrections (MDOC) Director Patricia Caruso; Heidi Washington, Warden at the Scott Correctional Facility during the relevant time period; Chris Crysler, Acting Deputy Warden; Annae Sanders, Deputy Warden; Elvira Chapman, Assistant Resident Unit Supervisor; Tonya Watson, Resident Unit Manager; Dr. Vijaya Mamidipaka; Inspector Larry Goodwin; Corrections Officer Barbara McDaniel; and Huron Valley Complex Deputy Warden Carol Vallie.  Defendants are sued in their official and individual capacities.

Plaintiff alleges that she suffers from various medical problems related to a closed head injury.  Since 1992, she has had a medical detail for specialized equipment, which includes a computer and related equipment such as printers, software, and other accessories and specialized organization aids such as color coded notebooks and other office supplies.  Plaintiff's complaint allege years of problems with various prison officials confiscating her medically necessary equipment or failing to honor the medical details she had been issued.  *See* Compl., at 4-20.  With respect to the officials named as defendants in her complaint, plaintiff's complaint breaks down into

four general categories.

First, plaintiff contends that several of the defendants failed to honor her medical detail. In early 2008, plaintiff alleges, she attempted to resolve with prison officials outstanding matters relating to the sufficiency of her health care detail and items she had ordered pursuant to her detail. In March 2008 she filed a grievance seeking correction of her medical detail, and wrote letters to various non-defendant officials regarding computer and other equipment which was either missing or not working properly. *See id*. at 19-20. On June 12, 2008, she wrote to defendant Campbell regarding missing computer supplies that she had ordered from Demco, and on June 25, 2008, she wrote to defendant Crysler regarding the incorrect detail and missing items. *See id*. at 20 & Ex. X. In late May, 2008, plaintiff was informed by defendant Campbell and defendant Martin that there was going to be a medical meeting to discuss her medical issues and the property she was allowed to possess because of her medical problems. The meeting was either never held or held in her absence. *See id*. at 21 & Ex. AA. Plaintiff subsequently wrote a letter to defendant Crysler requesting his assistance in locating missing computer equipment and supplies. *See id*. at 22 & Ex. CC. On July 26, 2008, plaintiff wrote a letter to defendant Caruso regarding property that had been located by prison officials but which she was being permitted to possess. *See id*. at 22 & Ex. DD. On August 7 and 9, 2008, she wrote to defendant Godwin regarding inoperable computer equipment and software. She also filed a grievance regarding these matters, which was reviewed by defendants Chapman and Watson. *See id*. at 22-23. On August 9, 2008, she filed a grievance regarding the items which had been confiscated from her and were being held by defendant Godwin. The response to the grievance concluded that plaintiff's medical accommodations had been honored and that the property was being held because additional information was forthcoming. *See id*. at 23 &

Exs. EE, KK.

Second, and comprising the bulk of plaintiff's complaint, plaintiff claims that defendants improperly handled and confiscated property which she was allowed to possess. On August 28, 2008, defendant Chapman "took the contents of Plaintiff's four footlockers, a state legal box, state stand up locker, and three desks of approved property and dumped it in the middle of the floor." *Id*. at 24. Defendant Chapman took videos and pictures of the property, and then called other officers to come and look at plaintiff's property. Defendant Chapman informed plaintiff that she was doing a property reduction. "Plaintiff was forced, for six hours, to endure this procedure where she was not allowed to move from the place they had seated her . . . , was allowed no water, was not allowed to go to the bathroom, and was allowed no phone calls, not even to her attorney whom she requested to be allowed to call." *Id*. at 25. Plaintiff claims that she "felt humiliated and degraded because of Defendant Chapman's actions." *Id*. Defendant Chapman informed Defendant Crysler that plaintiff had too much property. Defendant Crysler subsequently told plaintiff that "she had property that no prisoner should be allowed to have and that health care should never have written details for any of the property she had[.]" *Id*. On September 4, 2008, defendant McDaniel, acting pursuant to defendant Chapman's instructions, confiscated plaintiff's remaining property. Plaintiff alleges that

> Officer McDaniel arbitrarily took Plaintiff's property and did not inquire of Plaintiff any questions regarding any of the confiscated property. Plaintiff was not allowed to re-pack her own property and, therefore, was unable to exchange any of the packed property for the confiscated property. Ninety percent (90%) of the items listed on the Contraband Removal Record are hobby craft items allowed Plaintiff by court order, doctor order, medical detail, and special accommodation.

*Id*. at 26. Plaintiff alleges that during the time the property was being confiscated she had no blue uniform shirt or bottoms to wear to the law library, as she was required to do. She was not allowed to retrieve the items from her locker, and had to obtain permission from defendant Chapman to wear

her personal shirt. *See id*. at 23. Plaintiff wrote letters addressing these matters to defendant Chapman and defendant Washington. *See id*. at 23-24 & Ex. DD.

On September 5, 2008, plaintiff was given a Notice of Intent to Conduct an Administrative Hearing regarding the property. *See id*. & Ex. EE. The hearing was held on September 11, 2008, before defendant Watson. Defendant Watson determined that the property was properly confiscated as contraband, being in excess of allowable limits. Defendant Watson also determined that plaintiff was afforded the opportunity to repack her property, but plaintiff claims that "it was impossible for her to accomplish this as the confiscated property . . . was being stored in the Administrative Building and the remainder of her property was in her room in the housing unit," and she is unable to lift over ten pounds. *Id*. at 26-27. Plaintiff was required to send the property out of the prison. *See id*. at 27 & Ex. EE. Plaintiff filed several grievances regarding the confiscation of her property, the failure of defendants to follow her medical details regarding the property, and the "mental abusive treatment" by defendant Chapman. All of these grievances were denied. *See id*. at 28-29 & Exs. FF-JJ.

On January 29, 2009, plaintiff wrote a letter to defendant Sanders asking for the return of video cases for her typewriter and computer components. Plaintiff also requested that she be allowed to go through her confiscated property to find the documents necessary to prove that the property was legally purchased by plaintiff. Plaintiff was allowed to look at the confiscated property in defendant Crysler's conference room. Plaintiff filed a related grievance. *See id*. at 30 & Ex. NN. Plaintiff requested the return of her legal and computer property, but was told by defendant Watson that there was too much property. Defendant Watson determined that the grievance had been resolved, even though plaintiff did not agree. *See id*.

On February 10, 2009, in light of the forthcoming closure of the Scott facility, plaintiff filed a grievance regarding packing materials for her computer, typewriter, and related accessories. Non-defendant K. Davidson responded to the grievance by determining that "[t]he plastic boxes taken from Ms. Otrusina should be returned to her as soon as possible for safely storing, packing and moving her electronic equipment." *Id*. at 32 & Ex. OO. Plaintiff therefore agreed with the resolution of this grievance. However, when she received a copy of the grievance response, Davidson's response had been crossed out by defendant Crysler, who instead wrote that "Ms. Otrusina will be provided the necessary packing materials [unreadable] that her property is not damaged upon transportation of said property." *Id*.

Third, plaintiff alleges that on February 25, 2009, she was seen by defendant Vijaya Mamidipaka, M.D., for the purpose of updating her medical detail. *See id*. at 33 & Ex. QQ. According to plaintiff, defendant Mamidipaka informed her during the meeting that she had been instructed by defendant Crysler not to renew certain items on the plaintiff's medical detail. Plaintiff alleges that defendant Mamidipaka,

> without proper examination and knowledge deleted certain items from Plaintiff's medical details. Excluded from the February 25, 2009 medical detail were: six (6) bags of sanitary napkins (the new detail lists four (4) individual pads), clock, six (6) rolls of toilet paper, unlimited bathroom usage, commode chair, computer printer, color ink, computer supplies related paper and hobby craft for therapy; AT&T typewriter, three (3) storage plastic tubs for computer, printer, and typewriter for moving, 1 desk for computer, 1 desk for printer, 1 4-drawer wooden desk for typewriter.

*Id*. at 34. These items had been included in medical details completed in 2008, *see id*. & Ex. Y, and according to plaintiff "the majority of the items listed on the September 24, 2008 medical detail were omitted on the February 25, 2009 detail." *Id*. Plaintiff filed a grievance, claiming that defendant Mamidipaka had improperly amended her medical detail and that defendant Mamidipaka was not

qualified to determine plaintiff's need for the specialized equipment. *See id.* at 35 & Ex. QQ. Plaintiff was given an outside neurology consultation. Plaintiff claims that the doctor to whom she was taken was one of defendant Mamidipaka's in-laws. Plaintiff's grievance was denied, on the basis that the medical detail has been amended and thus plaintiff was not allowed to possess the property. *See id.* at 35-36 & Ex. QQ.

Finally, plaintiff alleges that these problems continued after her transfer to the Huron Valley Complex. She alleges that once she arrived at Huron Valley, she was "told her medical details and special accommodations would not be honored." Plaintiff concedes that she "was allowed her computer, color jet printer, computer software, color ink, [and] desks for this specialized equipment," but contends that defendant Vallie "did not honor the remainder of her medical details." *Id.* at 36. Specifically, plaintiff alleges that she "was not allowed her special bed from [Scott Correctional Facility] and a single room occupancy (she was given a roommate)." *Id.*

Plaintiff alleges that defendants improperly destroyed or damaged her property, were deliberately indifferent to her medical needs by failing to comply with the medical details and the recommendations of Dr. Greenberg, a specialist whom she had seen in 1992, and failed to comply with prison policies. *See id.* at 37-39. Plaintiff primarily seeks injunctive relief, including: (1) enforcement of the June 26, 2008, medical detail; (2) updated cognitive and other testing to determine the need for specialized equipment; (3) return of all property seized from her; (4) prohibition on defendants denying her possession of the equipment listed on the medical details; (5) Windows 98 reloaded onto her computer; and (6) appointment of an independent monitor to oversee her future purchases. Plaintiff also seeks a new printer at defendants' expense, reimbursement for "all legal fees, copies, storage fees, the cost of gas for her brother to drive to pick up confiscated

property for storage, and all hobbycraft items and ink that [were] thrown away and/or destroyed." Finally, plaintiff seeks "[c]ompensation for emotional damage and suffering the Court deems fit." *Id*. at 3, 40-41.

The matter is currently before the Court on two motions for summary judgment filed by defendants. First, on January 5, 2010, defendants Caruso and McDaniel filed a motion for summary judgment arguing that they are entitled to summary judgment because: (1) plaintiff has failed to allege defendant Caruso's personal involvement in the alleged deprivations; (2) plaintiff failed to exhaust her administrative remedies against defendant McDaniel; and (3) plaintiff cannot establish a constitutional violation. Plaintiff filed a response to this motion on February 17, 2010. Second, on February 5, 2010, defendants Crysler, Washington, Sanders, Chapman, Godwin, Watson, and Vallie filed a motion for summary judgment arguing that they are entitled to summary judgment because: (1) plaintiff has failed to allege personal involvement on the part of defendants Crysler, Washington, Sanders, and Godwin; (2) plaintiff has no viable due process claim regarding the confiscation or destruction of her property because there exist adequate post-deprivation remedies; (3) plaintiff's claims for emotional distress damages are barred by her failure to allege a physical injury; and (4) plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment. Plaintiff filed a response to this motion on March 2, 2010.

B.      *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c).[1]  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "A fact is material only if its resolution will affect the outcome of the lawsuit."  *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case."  *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

---

[1]Although defendants' motions alternatively seek dismissal under Rule 12(b)(6), a court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997).  Because the parties have submitted matters outside the pleadings, I consider only whether defendants are entitled to summary judgment.

present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he

existence of a mere scintilla of evidence in support of the non-moving party's position will not be

sufficient; there must be evidence on which the jury could reasonably find for the non-moving

party."  *Sutherland*, 344 F.3d at 613.

C.      *Analysis*

        1.      *Personal Involvement*

        Defendants first move for summary judgment–with respect to plaintiff's claims against

defendants Caruso, Crysler, Washington, Sanders, and Goodwin–on the basis that plaintiff has failed

to allege the personal involvement of these defendants in the alleged deprivations of her rights.  It

is well established that liability in a § 1983 action cannot be based on a theory of *respondeat*

*superior.  See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of*

*Social Servs.*, 436 U.S. 658, 691 (1978).  "To recover damages under 42 U.S.C. § 1983, a plaintiff

must establish a defendant's personal responsibility for the claimed deprivation of a constitutional

right."  *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993).  "Because vicarious liability is

inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own conduct, has violated the Constitution."  *Iqbal*, 129 S. Ct. at

1948.  In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not

simply conclusions, that show that an individual was personally involved in the deprivation of his

civil rights. Liability under § 1983 must be based on the personal involvement of the defendant."

*Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also, Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

### a. Defendants Caruso, Washington, Sanders, and Goodwin

Plaintiff's complaint alleges only that defendant Caruso failed to respond to two letters she sent regarding her computer equipment. Plaintiff alleges that "[o]n October 10, 2006, Plaintiff wrote a letter to Michigan Department of Corrections Director Patricia Caruso regarding the problems she

was having regarding the inability to get staff to follow orders resulting from *Cain v. MDOC*.

Plaintiff again wrote Director Caruso on November 10, 2006 thanking her for her assistance in

getting Plaintiff's computer and printer fixed and requesting her further assistance in locating the

Windows 98 software and printer, CD Rom that seemed to have been lost, for over a year, by Robert

Scott Correctional Facility staff." Compl., at 15 & Ex. T. Plaintiff alleges that "[o]n July 26, 2008,

Plaintiff wrote a letter to Michigan Department of Corrections Director, Patricia Caruso. The letter

was regarding approximately $3,000.00 worth of property that had been found but Plaintiff had not

been allowed to have." *Id*. at 22 & Ex. DD. Similarly, plaintiff's only allegation with respect to

defendant Washington is that "[o]n September 27, 2008, Plaintiff wrote a letter to Warden

Washington stating Deputy Crysler had not come to assist her as instructed by Warden Washington.

Plaintiff also addressed the impending move to another facility and the moving of the desks that hold

her computer, printer, and AT&T typewriter." *Id*. at 24 & Ex. DD. Plaintiff's only allegation with

respect to defendant Sanders likewise is that plaintiff wrote her a letter on January 29, 2009

"reminding [Sanders that plaintiff] had previously asked if she could have her video cases for her

typewriter/computer components." *Id*. at 30 & Ex. NN. Finally, plaintiff's allegations with respect

to defendant Goodwin are likewise limited to allegations that defendant Goodwin failed to

appropriately resolve her complaints or grievances. *See id*. at 20, 22-23.

These defendants' alleged failure to respond to plaintiff's complaints and letters is

insufficient to show that they personally encouraged or participated in the alleged constitutional

violations. *See Proctor v. Appelgate*, 661 F. Supp. 2d 743, 765-66 (E.D. Mich. 2009) (Borman, J.,

adopting report of Hluchaniuk, M.J.); *Elliott v. Dorian*, No. 05-1667, 2007 WL 120031, at *4 (W.D.

Pa. Jan. 10, 2007); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506-07 (S.D.N.Y. 2002). Thus, the

Court should conclude that these defendants are entitled to summary judgment.

### b. Defendant Crysler

With respect to defendant Crysler, however, the Court should conclude that plaintiff has sufficiently alleged personal involvement. It is true that some of plaintiff's allegations against defendant Crysler involve the same sort of failure-to-respond allegations which are insufficient to establish personal involvement. *See* Compl., at 20 (alleging that plaintiff "wrote to Assistant Warden Crysler regarding the incorrect medical detail . . . ."); *id*. at 22 (alleging that "[p]laintiff wrote a letter to Deputy Crysler requesting his assistance . . . ."); *id*. at 23 (alleging that "[p]laintiff wrote a letter to Deputy Crysler . . . ."); *id*. at 29 (alleging that plaintiff wrote a letter to defendant Crysler requesting his attendance at a meeting regarding her medical needs). Were these the only allegations against defendant Crysler, plaintiff's claims would fail for the same reason that they fail against defendants Caruso, Washington, Sanders, and Goodwin. However, plaintiff's complaint contains other allegations against defendant Crysler which, if true, would establish his personal participation in the alleged deprivation of plaintiff's constitutional rights. Plaintiff alleges that defendant Crysler was part of the process leading to the inventory of her cell and the confiscation of her property. Plaintiff alleges that defendant Crysler told her that "she had property that no prisoner should be allowed to have and that health care should never have written details for any of the property she had . . . ." *Id*. at 25. Plaintiff goes on to allege that defendant "Crysler allowed on September 4, 2008, Officer McDaniel . . . to confiscate[] Plaintiff's remaining property." *Id*. at 25-26. Plaintiff also alleges that defendant Crysler "instructed" defendant Mamidipaka "not to renew certain items on Plaintiff's medical detail. It was Deputy Crysler's solution to the problem of him being in trouble for authorizing Officer Chapman and other Robert Scott Correctional Facility staff

to take the items from Plaintiff . . . ." *Id.* at 33.  These allegations go beyond a mere failure to supervise or respond to plaintiff's complaints, and allege that defendant Crysler himself personally participated in the seizure of plaintiff's property and the amendment of plaintiff's medical detail. These allegations are sufficient, if true, to establish personal involvement by Crysler in the alleged constitutional deprivations.  Accordingly, the Court should conclude that defendant Crysler is not entitled to summary judgment on this basis.

      2.     *Exhaustion with Respect to Defendant McDaniel*

Defendants also move for summary judgment with respect to plaintiff's claims against defendant McDaniel, arguing that plaintiff failed to exhaust her administrative remedies with respect to these claims.  The Court should conclude that defendant McDaniel is not entitled to summary judgment on this basis.

Pursuant to the Prison Litigation Reform Act (PLRA), inmates challenging their conditions of confinement must exhaust their administrative remedies before pursuing a federal civil rights action.  Specifically, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

In order to properly exhaust a civil rights claim, a prisoner must comply with the prison system's "procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  As the Supreme Court recently explained, the scope of

a prisoner's obligation to exhaust is defined not by the PLRA itself, but by the prison's grievance procedures:

> [T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (citations omitted).

Michigan provides for a three-step grievance procedure. A Step I grievance is directed to the Step I Grievance Coordinator at the facility in which the prisoner is incarcerated. If the prisoner is dissatisfied with the Step I response, she may file a Step II appeal to the Warden of the facility. If the prisoner is again dissatisfied with the Step III response, she may file a Step III appeal to the Director of the Department of Corrections or her designee. *See* MICH. DEP'T OF CORRECTIONS POLICY DIRECTIVE 3.02.130(V), (BB), (FF) (effective July 9, 2007). The Policy Directive provides that a prisoner must include "the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id*., § (R).

Defendant's argument is based on plaintiff's allegation that "[o]n September 7, 2008, Plaintiff filed a grievance against ARUM Chapman and Officer McDaniel regarding the harassment and bad treatment of Plaintiff for the third time and the property taken from Plaintiff." Compl., at 28. The Complaint cites to Exhibit HH in support of this allegation. This grievance, dated September 7, 2008, primarily complains about defendant Chapman's treatment of plaintiff, and also complains of the confiscation of her property. *See id*., Ex. HH. Because this grievance does not

identify defendant McDaniel, defendants argue, it failed to comply with PD 03.02.130(R) and therefore plaintiff's claims against defendant McDaniel are not properly exhausted. Plaintiff's argument, however, ignores the second grievance plaintiff filed on September 7, 2008. This grievance is six pages long, detailing the confiscation of her property. This grievance does name defendant McDaniel regarding the confiscation of her property, specifically stating that defendant McDaniel failed to follow prison policies regarding the property she was allowed to keep and the packing of the property. *See* Compl., Ex. GG. This grievance sufficiently exhausts plaintiff's claims against defendant McDaniel in accordance with PD 03.02.130(R). Accordingly, the Court should conclude that defendant McDaniel is not entitled to summary judgment on this basis.

      3.    *Deprivation of Property*

Defendants next contend that plaintiff's complaint fails to state a claim. At the outset, defendant's argument is limited to the claim by plaintiff that the deprivation of her property violated her right to due process of law. Defendants make no argument that plaintiff has failed to state an Eighth Amendment claim for deliberate indifference to her medical needs by depriving her of medically necessary property or altering her medical detail, a claim which is explicitly asserted in the complaint, *see* Compl., at 37, 38-39, as well as fairly inferred from her repeated allegations that the property was necessary as a result of her closed head injury. A claim that defendants exhibited deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment is distinct from a claim that defendants deprived her of property without due process. *Cf. Flagner v. Arko*, No. 87-3469, 1988 WL 1104, at *1 (6th Cir. Jan. 11, 1988) ("However, the plaintiff's substantive due process claims under the first, fourth and eighth amendments must be separately analyzed as they involve issues distinct from plaintiff's procedural due process claim."). Thus, I address here only

any due process claim plaintiff may be asserting, and do not address whether plaintiff has stated a viable Eighth Amendment claim.[2] Further, all of the moving defendants assert that they are entitled to qualified immunity. They do so, however, only on the basis that plaintiff has failed to state federal constitutional claim; they do not allege that the rights alleged to have been violated were not clearly established. Thus, the Court need not separately address defendant's qualified immunity argument.

Turning to plaintiff's due process claim, the Court should conclude that defendants are entitled to summary judgment. The Fourteenth Amendment does not protect against all of the State's deprivations of life, liberty, or property. *See Parratt v. Taylor*, 451 U.S. 527, 537 (1981). It protects against only those deprivations of life, liberty, or property that are "without due process of law." *Id.* Accordingly, the Supreme Court has recognized that the negligent deprivation of an inmate's property does not violate due process if the state provides an adequate remedy to redress the wrong. *See id.* at 537, *overruled in part by Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligence does not amount to a "deprivation" at all, thus the Due Process Clause is not implicated). Likewise, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In asserting a violation of procedural due process, a plaintiff must plead and prove that available state procedures for redressing the wrong are not adequate. *See*

---

[2]Defendants Caruso and McDaniel make a blanket assertion that "they are shielded by qualified immunity in their individual capacity because Otrusina has not asserted a federal violation at all. Otrusina has not alleged facts sufficient to demonstrate a violation of any constitutional right." Def. Caruso's and McDaniel's Br. in Supp. of Mot. for Summ. J., at 11. These two sentences constitute the entirety of their argument that plaintiff has failed to state a claim; they provide no analysis of plaintiff's claims under any governing law, nor provide any argument as to why the allegations are insufficient.

*Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983); *see also, Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc).

Here, plaintiff has made no allegation that Michigan does not have an adequate post-deprivation remedy to address her alleged property loss. Michigan's grievance system provides state prisoners with an adequate procedure to challenge actions taken by prison officials. An inmate may file a written grievance; if its resolution is unsatisfactory to plaintiff, she may then seek sequential evaluation of its disposition by supervisory staff, the warden, the MDOC deputy director, the department director, and the ombudsman. Furthermore, if these five levels prove insufficient, Michigan law allows for judicial review of administrative decision in the state courts. *See De Walt v. Warden, Marquette Prison*, 315 N.W.2d 584, 585 (Mich. Ct. App. 1982); MICH. COMP. LAWS §§ 791.251 *et seq*. Finally, a state tort remedy is available. These remedies have been held to be adequate under federal due process standards. *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Branham v. Spurgis*, 720 F. Supp. 605, 608 (W.D. Mich. 1989). In short, "plaintiff has not shown that no adequate postdeprivation state remedy was available," and therefore she has not alleged a violation of her procedural due process rights so as to enable her to state a § 1983 claim. *See Barnier v. Szentmiklosi*, 810 F.2d 594, 600 (6th Cir. 1987). Accordingly, the Court should grant defendants' motion for summary judgment on this claim.

4.      *Emotional Distress Damages*

Defendants also contend that they are entitled to summary judgment to the extent that plaintiff seeks monetary damages to compensate for the emotional distress she suffered as a result of defendants' alleged actions. The Court should agree.

Plaintiff principally seeks declaratory and injunctive relief on her complaint. However,

plaintiff also seeks compensatory monetary damages on two bases. First, she seeks "reimbursement for all legal fees, copies, storage fees, the cost of gas for her brother to drive to pick up confiscated property for storage, and all hobbycraft items and ink that was thrown away and/or destroyed." Compl., at 41. Second, she seeks "[c]ompensation for emotional damage and suffering the Court deems fit." *Id.* This latter request for emotional distress damages is barred by 42 U.S.C. § 1997e, which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Although plaintiff alleges that she suffers from a closed head injury, this injury does not arise from any conduct of defendants. Nor does she allege any physical injury or exacerbation of her physical condition by virtue of defendants conduct. Thus, she may not receive damages for her alleged emotional injury under § 1997e(e), and the Court should grant summary judgments to defendants to the extent plaintiff seeks such damages.

5.        *Official Capacity Claims*

Finally, the Court should grant summary judgment to all defendants to the extent plaintiff is suing them in their official capacities. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion). Further, as the Supreme Court made clear in *Will v.*

*Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Eleventh Amendment bars suits against state officials sued in their official capacity. *See id*. at 71; *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000). Accordingly, the Court should dismiss plaintiff's claim against defendants in their official capacities

D.    *Conclusion*

In view of the foregoing, the Court should grant in part and deny in part defendants' motions for summary judgment. Specifically, the Court should grant summary judgment to defendants with respect to plaintiff's: (1) claims against defendants Caruso, Washington, Sanders, and Goodwin based on plaintiff's failure to allege their personal involvement; (2) due process claims relating to the confiscation or destruction of her property; (3) request for emotional distress damages; and (4) claims against defendants in their official capacities. If the Court accepts this recommendation, plaintiff's deliberate indifference claims against the remaining defendants (Crysler, McDaniel, Chapman, Mamidipaka, and Vallie) in their individual capacities relating to their alleged interference with or confiscation of property required by her medical needs and allegedly improper amendment of her medical details will remain pending before the Court.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party

might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/29/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on July 29, 2010.

s/Eddrey Butts
Case Manager