UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARA OTRUSINA,

        Plaintiff,

                                      CASE NO. 2:09-CV-12828

v.                              JUDGE AVERN COHN
                                     MAGISTRATE JUDGE PAUL KOMIVES

CHRIS CRYSLER, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (docket #59)**

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      A.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
      B.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           1.     *Eighth Amendment Claims Generally* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
           2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

\*       \*       \*       \*       \*

I.      RECOMMENDATION: The Court should grant defendants' motion for summary judgment.

II.     REPORT:

A.    *Procedural Background*

Plaintiff Sara Otrusina is a state prisoner, currently incarcerated at the Huron Valley

Complex–Women's in Ypsilanti, Michigan. At the times relevant to this action, plaintiff was also

incarcerated in the now-closed Robert Scott Correctional Facility in Plymouth, Michigan. Plaintiff

commenced this action on July 17, 2009, by filing a *pro se* civil rights action pursuant to 42 U.S.C.

§ 1983. Defendants are: Michigan Department of Corrections (MDOC) Director Patricia Caruso;

Heidi Washington, Warden at the Scott Correctional Facility during the relevant time period; Chris

Crysler, Acting Deputy Warden; Annae Sanders, Deputy Warden; Elvira Chapman, Assistant Resident Unit Supervisor; Tonya Watson, Resident Unit Manager; Dr. Vijaya Mamidipaka; Inspector Larry Goodwin; Corrections Officer Barbara McDaniel; and Huron Valley Complex Deputy Warden Carol Vallie.  Defendants are sued in their official and individual capacities.

Plaintiff alleges that she suffers from various medical problems related to a closed head injury.  Since 1992, she has had a medical detail for specialized equipment, which includes a computer and related equipment such as printers, software, and other accessories and specialized organization aids such as color coded notebooks and other office supplies.  Plaintiff's complaint alleges years of problems with various prison officials confiscating her medically necessary equipment or failing to honor the medical details she had been issued.  *See* Compl., at 4-20.  With respect to the officials named as defendants in her complaint, plaintiff's complaint breaks down into four general categories.

First, plaintiff contends that several of the defendants failed to honor her medical detail.  In early 2008, plaintiff alleges, she attempted to resolve with prison officials outstanding matters relating to the sufficiency of her health care detail and items she had ordered pursuant to her detail. In March 2008 she filed a grievance seeking correction of her medical detail, and wrote letters to various non-defendant officials regarding computer and other equipment which was either missing or not working properly.  *See id*. at 19-20.  On June 12, 2008, she wrote to defendant Campbell regarding missing computer supplies that she had ordered from Demco, and on June 25, 2008, she wrote to defendant Crysler regarding the incorrect detail and missing items.  *See id*. at 20 & Ex. X. In late May, 2008, plaintiff was informed by defendant Campbell and defendant Martin that there was going to be a medical meeting to discuss her medical issues and the property she was allowed

to possess because of her medical problems.  The meeting was either never held or held in her absence.  *See id*. at 21 & Ex. AA.  Plaintiff subsequently wrote a letter to defendant Crysler requesting his assistance in locating missing computer equipment and supplies.  *See id*. at 22 & Ex. CC.  On July 26, 2008, plaintiff wrote a letter to defendant Caruso regarding property that had been located by prison officials but which she was being permitted to possess.  *See id*. at 22 & Ex. DD. On August 7 and 9, 2008, she wrote to defendant Godwin regarding inoperable computer equipment and software.  She also filed a grievance regarding these matters, which was reviewed by defendants Chapman and Watson.  *See id*. at 22-23.  On August 9, 2008, she filed a grievance regarding the items which had been confiscated from her and were being held by defendant Godwin.  The response to the grievance concluded that plaintiff's medical accommodations had been honored and that the property was being held because additional information was forthcoming.  *See id*. at 23 & Exs. EE, KK.

Second, and comprising the bulk of plaintiff's complaint, plaintiff claims that defendants improperly handled and confiscated property which she was allowed to possess.  On August 28, 2008, defendant Chapman "took the contents of Plaintiff's four footlockers, a state legal box, state stand up locker, and three desks of approved property and dumped it in the middle of the floor." *Id*. at 24.  Defendant Chapman took videos and pictures of the property, and then called other officers to come and look at plaintiff's property.  Defendant Chapman informed plaintiff that she was doing a property reduction.  "Plaintiff was forced, for six hours, to endure this procedure where she was not allowed to move from the place they had seated her . . . , was allowed no water, was not allowed to go to the bathroom, and was allowed no phone calls, not even to her attorney whom she requested to be allowed to call." *Id*. at 25.  Plaintiff claims that she "felt humiliated and degraded because of

Defendant Chapman's actions." *Id*. Defendant Chapman informed Defendant Crysler that plaintiff

had too much property. Defendant Crysler subsequently told plaintiff that "she had property that

no prisoner should be allowed to have and that health care should never have written details for any

of the property she had[.]" *Id*. On September 4, 2008, defendant McDaniel, acting pursuant to

defendant Chapman's instructions, confiscated plaintiff's remaining property. Plaintiff alleges that

> Officer McDaniel arbitrarily took Plaintiff's property and did not inquire of Plaintiff
> any questions regarding any of the confiscated property. Plaintiff was not allowed
> to re-pack her own property and, therefore, was unable to exchange any of the
> packed property for the confiscated property. Ninety percent (90%) of the items
> listed on the Contraband Removal Record are hobby craft items allowed Plaintiff by
> court order, doctor order, medical detail, and special accommodation.

*Id*. at 26. Plaintiff alleges that during the time the property was being confiscated she had no blue

uniform shirt or bottoms to wear to the law library, as she was required to do. She was not allowed

to retrieve the items from her locker, and had to obtain permission from defendant Chapman to wear

her personal shirt. *See id*. at 23. Plaintiff wrote letters addressing these matters to defendant

Chapman and defendant Washington. *See id*. at 23-24 & Ex. DD.

On September 5, 2008, plaintiff was given a Notice of Intent to Conduct an Administrative

Hearing regarding the property. *See id*. & Ex. EE. The hearing was held on September 11, 2008,

before defendant Watson. Defendant Watson determined that the property was properly confiscated

as contraband, being in excess of allowable limits. Defendant Watson also determined that plaintiff

was afforded the opportunity to repack her property, but plaintiff claims that "it was impossible for

her to accomplish this as the confiscated property . . . was being stored in the Administrative

Building and the remainder of her property was in her room in the housing unit," and she is unable

to lift over ten pounds. *Id*. at 26-27. Plaintiff was required to send the property out of the prison.

*See id*. at 27 & Ex. EE. Plaintiff filed several grievances regarding the confiscation of her property,

4

the failure of defendants to follow her medical details regarding the property, and the "mental abusive treatment" by defendant Chapman. All of these grievances were denied. *See id*. at 28-29 & Exs. FF-JJ.

On January 29, 2009, plaintiff wrote a letter to defendant Sanders asking for the return of video cases for her typewriter and computer components. Plaintiff also requested that she be allowed to go through her confiscated property to find the documents necessary to prove that the property was legally purchased by plaintiff. Plaintiff was allowed to look at the confiscated property in defendant Crysler's conference room. Plaintiff filed a related grievance. *See id*. at 30 & Ex. NN. Plaintiff requested the return of her legal and computer property, but was told by defendant Watson that there was too much property. Defendant Watson determined that the grievance had been resolved, even though plaintiff did not agree. *See id*.

On February 10, 2009, in light of the forthcoming closure of the Scott facility, plaintiff filed a grievance regarding packing materials for her computer, typewriter, and related accessories. Non-defendant K. Davidson responded to the grievance by determining that "[t]he plastic boxes taken from Ms. Otrusina should be returned to her as soon as possible for safely storing, packing and moving her electronic equipment." *Id*. at 32 & Ex. OO. Plaintiff therefore agreed with the resolution of this grievance. However, when she received a copy of the grievance response, Davidson's response had been crossed out by defendant Crysler, who instead wrote that "Ms. Otrusina will be provided the necessary packing materials [unreadable] that her property is not damaged upon transportation of said property." *Id*.

Third, plaintiff alleges that on February 25, 2009, she was seen by defendant Vijaya Mamidipaka, M.D., for the purpose of updating her medical detail. *See id*. at 33 & Ex. QQ.

5

According to plaintiff, defendant Mamidipaka informed her during the meeting that she had been instructed by defendant Crysler not to renew certain items on the plaintiff's medical detail. Plaintiff alleges that defendant Mamidipaka,

> without proper examination and knowledge deleted certain items from Plaintiff's medical details. Excluded from the February 25, 2009 medical detail were: six (6) bags of sanitary napkins (the new detail lists four (4) individual pads), clock, six (6) rolls of toilet paper, unlimited bathroom usage, commode chair, computer printer, color ink, computer supplies related paper and hobby craft for therapy; AT&T typewriter, three (3) storage plastic tubs for computer, printer, and typewriter for moving, 1 desk for computer, 1 desk for printer, 1 4-drawer wooden desk for typewriter.

*Id*. at 34. These items had been included in medical details completed in 2008, *see id*. & Ex. Y, and according to plaintiff "the majority of the items listed on the September 24, 2008 medical detail were omitted on the February 25, 2009 detail." *Id*. Plaintiff filed a grievance, claiming that defendant Mamidipaka had improperly amended her medical detail and that defendant Mamidipaka was not qualified to determine plaintiff's need for the specialized equipment. *See id*. at 35 & Ex. QQ. Plaintiff was given an outside neurology consultation. Plaintiff claims that the doctor to whom she was taken was one of defendant Mamidipaka's in-laws. Plaintiff's grievance was denied, on the basis that the medical detail has been amended and thus plaintiff was not allowed to possess the property. *See id*. at 35-36 & Ex. QQ.

Finally, plaintiff alleges that these problems continued after her transfer to the Huron Valley Complex. She alleges that once she arrived at Huron Valley, she was "told her medical details and special accommodations would not be honored." Plaintiff concedes that she "was allowed her computer, color jet printer, computer software, color ink, [and] desks for this specialized equipment," but contends that defendant Vallie "did not honor the remainder of her medical details." *Id*. at 36. Specifically, plaintiff alleges that she "was not allowed her special bed from [Scott

6

Correctional Facility] and a single room occupancy (she was given a roommate)." *Id*.

Plaintiff alleges that defendants improperly destroyed or damaged her property, were deliberately indifferent to her medical needs by failing to comply with the medical details and the recommendations of Dr. Greenberg, a specialist whom she had seen in 1992, and failed to comply with prison policies. *See id*. at 37-39. Plaintiff primarily seeks injunctive relief, including: (1) enforcement of the June 26, 2008, medical detail; (2) updated cognitive and other testing to determine the need for specialized equipment; (3) return of all property seized from her; (4) prohibition on defendants denying her possession of the equipment listed on the medical details; (5) Windows 98 reloaded onto her computer; and (6) appointment of an independent monitor to oversee her future purchases. Plaintiff also seeks a new printer at defendants' expense, reimbursement for "all legal fees, copies, storage fees, the cost of gas for her brother to drive to pick up confiscated property for storage, and all hobbycraft items and ink that [were] thrown away and/or destroyed." Finally, plaintiff seeks "[c]ompensation for emotional damage and suffering the Court deems fit." *Id*. at 3, 40-41.

On July 29, 2010, I filed a Report recommending that the Court grant in part and deny in part the defendants' then-pending motions for summary judgment. Specifically, I recommended that the Court grant summary judgment to defendants with respect to: (1) plaintiff's claims against defendants Caruso, Washington, Sanders, and Goodwin based on plaintiff's failure to allege their personal involvement; (2) plaintiff's due process claims relating to the confiscation or destruction of her property; (3) plaintiff's request for emotional distress damages; and (4) plaintiff's claims against defendants in their official capacities. The Court entered an Order adopting my Report and granting in part and denying in part defendants' motions on September 16, 2010. Still remaining

7

following the Court's Order are plaintiff's deliberate indifference claims against defendants Crysler, McDaniel, Chapman, Madidipake, and Vallie relating to their alleged interference with or confiscation of property required by her medical needs and allegedly improper amendment of her medical details.

The matter is currently before the Court on the motion for summary judgment filed by defendants Crysler, McDaniel, Chapman, and Vallie on September 28, 2010. Defendants alleged that they were not personally involved in any deprivation of plaintiff's rights or that her Eighth Amendment rights were not violated by the confiscation of her property. Plaintiff filed responses to the motion on November 19 and December 23, 2010.

B.    *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of

material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*

*Corp.*, 477 U.S. at 325.  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell*

*Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than

present some evidence on a disputed issue.  As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the
> nonmoving party for a jury to return a verdict for that party.  If the [non-movant's]
> evidence is merely colorable, or is not significantly probative, summary judgment
> may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Thus, "[t]he

existence of a mere scintilla of evidence in support of the non-moving party's position will not be

sufficient; there must be evidence on which the jury could reasonably find for the non-moving

party." *Sutherland*, 344 F.3d at 613.

C.     *Analysis*

Plaintiff alleges that defendants deprived her of medically necessary property in violation

of her Eighth Amendment right to be free from cruel and unusual punishment.[1]   The Court should

conclude that defendants are entitled to summary judgment on this claim.

      1.    *Eighth Amendment Claims Generally*

The Eighth Amendment provides:  "Excessive bail shall not be required, nor excessive fines

imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.  In its purest

sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or

disciplinary sense.  In its application by the courts, the amendment actually protects a wide

assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217

U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S.

153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop

v. Dulles*, 356 U.S. 86 (1958) (plurality opinion).  *See generally, Parrish v. Johnson*, 800 F.2d 600,

609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S.

337, 349 (1981).  On the other hand, it does not permit inhumane ones, and it is clear that "the

treatment a prisoner receives in prison and the conditions under which he is confined are subject to

scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also,

Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The amendment imposes affirmative duties on prison

officials, "who must provide humane conditions of confinement; prison officials must ensure that

inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable

measures to guarantee the safety of the inmates.'"  *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517,

---

    [1]As noted above, plaintiff also contends that the removal and/or destruction of her property violated her right to due process of law under the Fourteenth Amendment.  This claim was addressed in my prior Report, and is no longer before the Court.

526-27 (1984)).  If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment.  *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Such claims must satisfy both an objective and a subjective test.  *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  The plaintiff bears the burden of proving these elements by a preponderance of the evidence.  *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection.  *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981).  To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 349.  The objective component is contextually driven and is responsive to "'contemporary standards of decency.'"  *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).  The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton."  *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard.  *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06.  Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  A prison official is not free to

11

ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *See id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *See id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiffs' claims that defendants denied her medically necessary supplies are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*. In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 105. Thus, a court faced with failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996). Importantly, however, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

    2.    *Analysis*

Here, the evidence submitted by the parties does not show a genuine issue of material fact

with respect to whether defendants were deliberately indifferent to plaintiff's serious medical needs. The undisputed evidence shows that plaintiff's property was initially confiscated on September 4, 2008, as excess property pursuant to prison regulations.  As reflected in the contraband removal report, this property consisted mostly of various hobbycraft items, cassette tapes, books, and some clothing.  *See* Def.s' Br., Ex. A, Aff. of Christopher Crysler, Att. 1.  At an administrative hearing conducted on September 11, 2008, Resident Unit Manager Tonya Watson found that the property was excess and was not authorized by plaintiff's special medical accommodations.  *See id.*, Att. 3. Although plaintiff contends that this property was deemed medically necessary by various treating physicians over the course of her incarceration, or that she was entitled to have the property pursuant to the settlement in the *Cain v. MDOC*, No. 88-61119 (Mich. Ct. Claims) litigation, she has offered nothing to show that these items were actually included in the medical details and special accommodations notices which were in effect at the time of the seizure of her property and the administrative hearing.  And, indeed, a comparison of the contraband removal inventory and the medical details shows that the property seized was not set forth in the medical detail or special accommodations notice.  *Compare id.*, Att. 1, *with id.*, Att. 2 and Ex. D, Aff. of Carol Vallie, Att. 1.  Nor does plaintiff dispute that only medical personnel may issue medical details or special accommodation notices.

In light of these facts, plaintiff cannot show that defendants acted with a reckless disregard of a substantial risk of harm–*i.e.*, with deliberate indifference–in confiscating her property.  It is well established "[i]f a prisoner is under the care of medical experts, . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also*, *Clark-Murphy v. Foreback*, 439 F.3d 280, 291 (6th Cir.

2006); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Thus, prison officials are entitled to rely on the decisions made by medical personnel. *See Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920 (N.D. Ill. 2002); *Shelton v. Angelone*, 148 F. Supp. 2d 670, 678 (W.D. Va. 2001). Defendants cannot be deemed to have been deliberately indifferent to plaintiff's medical needs by following the medical details and special accommodation notices which were issued by medical personnel. *See Davis v. Ramen*, No. 1:06-cv-01216, 2011 WL 2313653, at *9 (E.D. Cal. June 9, 2011); *Titlow v. Corrections Medical Serv.*, No. 07-cv-12083, 2008 WL 907450, at *9 (E.D. Mich. Mar. 31, 2008) (O'Meara, J., adopting report of Komives, M.J.); *Washington v. Randall-Owens*, No. 06-12588, 2007 WL 2713749, at *11 (E.D. Mich. Sept. 17, 2007) (Borman, J., adopting report of Pepe, M.J.).

It may be, as plaintiff asserts, that "MDOC health care staff failed to follow court orders in writing her Special Accommodation Notices." Pl.'s Resp. Br., dated 12/23/10, at 5. However, these medical personnel are not named as defendants, and such claims do not form any part of plaintiff's complaint. It may also be, as plaintiff contends, that "Defendant Chapman's interpretation of Plaintiff's medical details are different from what Plaintiff understands them to be." *Id.* at 6. Even were the medical details capable of differing interpretations, and even were plaintiff's interpretation correct, this would fall far short of establishing that defendant Chapman, or any of the other defendants, were deliberately indifferent to plaintiff's serious medical needs. As the Seventh Circuit has explained, "'[d]eliberate indifference' means *recklessness* in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred. Such disregard is tantamount to intending that the injury occur." *James v. Milwaukee County*, 956 F.2d 696, 700 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 941 F.2d 344, 348 (7th Cir. 1991)) (citations omitted); *accord Farmer*, 511 U.S. at 836 (equating "deliberate indifference" to the

14

"recklessness" standard under criminal law); *Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (negligence insufficient to establish deliberate indifference); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988) (gross negligence insufficient).  As explained above, the medical details and special accommodation notices do not, on their face, require the materials which were confiscated from plaintiff.  To the extent defendants failed to interpret them in the manner plaintiff suggests, their failure to do so does not meet the high standard of deliberate indifference.  This is not a case where plaintiff was deprived of medical equipment or supplies the necessity of which to plaintiff's health would have been obvious to non-medical personnel.  Thus, plaintiff cannot establish that defendants were deliberately indifferent to her serious medical needs by confiscating her property.

With respect to plaintiff's claim against defendant Vallie alleging that she was denied a special bed and was forced to share a cell after her transfer to Huron Valley Complex, plaintiff likewise cannot show that defendant Vallie was deliberately indifferent.  Again, none of the medical details submitted by the parties require that plaintiff be provided a special bed.  They do require that plaintiff be placed in a single occupancy cell, but plaintiff offers no rebuttal to defendant Vallie's averment that after she become aware of plaintiff's concerns regarding the double occupancy cell and verified her medical detail for a single room accommodation, the cellmate was transferred out of the cell, and that plaintiff was in a double occupancy cell for only two weeks.  *See* Def.s' Br., Ex. D, ¶¶ 7-8.  Even if staff at Huron Valley Complex were negligent in not realizing sooner that plaintiff had a medical accommodation for a single occupancy cell, nothing in the record shows deliberate indifference.  Upon learning of plaintiff's need, defendant Vallie took steps to correct the situation.  Under these facts, plaintiff cannot show that defendant Vallie was deliberately indifferent to her serious medical needs.

15

Further, to succeed on her deliberate indifference claims plaintiff must establish "harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also*, *Smith v. Kimbhal*, ___ Fed. Appx. ___, 2011 WL 1304862, at *1 (5th Cir. Apr. 6, 2011) (per curiam) (prisoner asserting a deliberate indifference medical claim must allege and show "that he suffered substantial harm as a result of his failure to obtain treatment."); *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (prisoner alleging deliberate indifference by delay in providing treatment must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."). Although plaintiff alleges that the confiscated materials were prescribed for rehabilitative purposes, the evidence establishes that defendants did not deprive plaintiff of all her rehabilitative materials. Plaintiff's complaint contains no allegations asserting any specific harm to her medical condition or rehabilitative needs caused by the deprivation of the property at issue here. Nor does she make any such arguments in her brief. Thus, "plaintiff has not submitted medical evidence that [s]he suffered any harm," and her deliberate indifference claim fails on this basis as well. *Hardy v. 3 Unknown Agents*, 690 F. Supp. 2d 1074, 1099 (C.D. Cal. 2010).

D.     *Conclusion*

In view of the foregoing, the Court should conclude that there is no genuine issue of material fact with respect to whether defendants were deliberately indifferent to her serious medical needs in confiscating her excess property, or in temporarily placing her in a double occupancy cell. Accordingly, the Court should grant defendants' motion for summary judgment.[2]

---

[2]If the Court accepts this recommendation, plaintiff's sole remaining claim will be the claim asserted against defendant Madidipake. On October 28, 2010, I entered an Order directing the Marshal to served the complaint on defendant Madidipake. He has not yet responded to the complaint, and it is unclear whether service has been effectuated.

16

III.       NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/10/11

17

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on August 10,  2011.

s/Eddrey Butts
Case Manager